**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 8, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

JONELLA TESONE,

     Plaintiff - Appellant,

v.

EMPIRE MARKETING STRATEGIES,

     Defendant - Appellee.

------------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Amicus Curiae.

No. 19-1026

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CV-02101-MEH-KLM)**
_____

Joseph A. Whitcomb, (LaQunya L. Baker, with him on the briefs), Whitcomb, Selinsky, McAuliffe, PC., Denver, Colorado, for Plaintiff - Appellant.

John R. Mann, Gordon & Rees LLP, Denver, Colorado, for Defendant - Appellee.

James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General Counsel, Elizabeth E. Theran, Assistant General Counsel, and Julie L. Gantz, Attorney, Equal Employment Opportunity Commission, Office of General Counsel, Washington, D.C., filed an amicus curiae brief in support of Appellant.
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.

———————————————————

Jonella Tesone claimed that Empire Marketing Strategies ("EMS") discriminated against her under the Americans with Disabilities Act ("ADA") when it terminated her employment. The district court granted summary judgment to EMS.

On appeal, Ms. Tesone alleges the district court erred when it denied her motions to (1) amend the scheduling order to extend the time for her to designate an expert and (2) amend her complaint. We disagree and affirm the denials. She also contends the court erred when it (3) granted summary judgment to EMS. We agree and remand for further consideration. We exercise appellate jurisdiction under 28 U.S.C. § 1291.[1]

First, Ms. Tesone filed her motion to amend the scheduling order on November 1, 2018—nine months after the February 2018 expert disclosure deadline, seven months after indicating her intent to file, and three months after EMS's motion for summary judgment. The district court did not abuse its discretion when it found Ms. Tesone had not shown "good cause" to extend the scheduling order as required under Federal Rule of Civil Procedure 16(b)(4). *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).

Second, Ms. Tesone filed her motion to amend her complaint on November 7, 2018—nearly ten months after the January 2018 deadline for amending pleadings. The

---

[1] The parties agreed to have all proceedings in the case decided by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. We will refer to the magistrate judge's court as the "district court."

district court did not abuse its discretion when it found Ms. Tesone had not shown "good cause" under Rule 16(b)(4) as to why she should be allowed to amend after the scheduling order deadline.

Third, the district court erred on summary judgment. The court said an expert must be used to prove a disability in discrimination cases brought under the ADA.[2] It granted summary judgment because Ms. Tesone did not have a medical expert witness to prove she suffered from lower back pain that substantially interfered with her ability to lift. We disagree that the ADA always requires an expert.

## I. BACKGROUND

### A. *Factual Background*

In 2012, EMS hired Ms. Tesone as a Product Retail Sales Merchandiser. Her job duties included changing or "resetting" retail displays in grocery stores. When she was hired, Ms. Tesone informed EMS that she had back problems and could not lift more than 15 pounds.[3]

---

[2] As discussed below, in 2008, Congress amended the ADA by passing the ADA Amendments Act ("ADAAA"). In this opinion, we refer to the amended Act simply as "the ADA."

[3] When asked at her deposition whether she presented EMS with "documentation related to [her] back injury," Ms. Tesone said that "when [she] was hired," EMS supervisor Julie Reynolds showed her a form that referred to "Lifting 50 pounds or more." Aplt. App. at 507. Ms. Tesone testified "[Ms. Reynolds] crossed out the '50' and put '15,' and . . . was well aware of [Ms. Tesone's] restrictions to not lift more than 15 pounds spatially." *Id.*

3

In October 2016, Ms. Tesone was assigned to complete a reset in Gunnison, Colorado. Because she anticipated the reset would require long hours, she prearranged to stay in Gunnison for an additional night.[4] She did not seek EMS's approval for this extension, and EMS did not approve the stay.

Shortly after the trip, EMS met with Ms. Tesone to discuss the unapproved October hotel stay and "general performance issues." Aplt. App. at 19; *see also id.* at 190. During this meeting, Ms. Tesone referred to her "lifting limitation." *Id.* at 190. EMS requested a doctor's note documenting the limitation. Ms. Tesone did not immediately provide a note. EMS renewed its request at least four times. Four months after the meeting, Ms. Tesone provided a letter from Dr. Brian Manjarres. She had not met Dr. Manjarres or consulted with him about her health before obtaining the note. The letter stated Ms. Tesone "has certain limitations related to muscle weakness" and "chronic lower back pain." *Id.* at 166. It "recommend[ed] the following accommodations: 1) No lifting over head 2) Can not [sic] lift spatially in front of her more than 15 pounds." *Id.*

Between December 2016 and February 2017, EMS spoke with Ms. Tesone multiple times about various workplace issues, including "her communication with coworkers." *Id.* at 19-20; *see also id.* at 191. On February 27, 2017, EMS

---

[4] EMS maintains this was "a terminable offense." Aplt. App. at 19. Ms. Tesone argues the extended stay was "required to protect the safety of the employee that she was training" and was "not a terminal offense" because she did not "misrepresent[] the amount of time needed to complete the reset." *Id.* at 190.

terminated Ms. Tesone's employment, citing "consistent violations of company policies." *Id.* at 192.[5]

Ms. Tesone filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charging form listed ten categories of discrimination and asked her to "check [the] appropriate box(es)" to indicate what form of discrimination she had experienced. Ms. Tesone checked only the "disability" box and left the "retaliation" box blank. She also provided a statement describing "the particulars." *Id.* at 434. It read:

> I began working for Respondent [EMS] in 2010.[6] I have a disability, as defined within the meaning of the relevant statute, of which Respondent was aware. Throughout my employment I had a reasonable accommodation due to my disability, a lifting restriction. During the relevant time period Ms. Kelly Bruce[] began working for Respondent in my chain of command. Subsequent to this the terms/conditions of my employment changed. For instance, but not limited to, I was no longer allowed to train employees, I was offered different work, and my accommodation was not honored. Additionally, an expected promotion, to Lead, was denied and given to an employee outside my protected class with less seniority and experience than me. On or about February 28, 2017, I was discharged.

---

[5] Ms. Tesone does not contest that EMS cited policy violations as the basis for the termination, but she argues "[EMS] fired [her] in an attempt to avoid any effort imposed on [EMS] by [her] ADA recognized disability." Aplt. App. at 192. She suggests EMS's "baseless claims of policy violations" are mere "pretext." *Id.*

[6] This date appears to be erroneous. The record indicates, and the parties agree, that Ms. Tesone was hired in 2012. *See* Aplt. App. at 18, 189.

> I believe that I have been discriminated against on the basis of a disability in violation of the Americans with Disabilities Act of 1990, as amended.

*Id.*

In June 2017, the EEOC closed Ms. Tesone's file and notified her of her right to sue.[7]

## B. *Procedural Background*

### 1. **Complaint**

On August 31, 2017, Ms. Tesone filed a complaint against EMS and two of its employees in the United States District Court for the District of Colorado. She asserted three claims: (1) disability discrimination under the ADA (against EMS), (2) interference with contract and prospective business advantage (against the EMS employees), and (3) intentional infliction of emotional distress ("IIED") (against the EMS employees).

### 2. **Scheduling Order and Dismissals**

The district court's November 21, 2017 scheduling order set deadlines of (1) January 22, 2018, to amend pleadings; (2) May 21, 2018, to complete discovery; and (3) February 5, 2018, to disclose expert witnesses. The court dismissed the IIED claim against both employee defendants and dismissed the tortious interference claim against one employee defendant. The parties then stipulated to dismissal of the

---

[7] The notice stated the EEOC was closing its file because "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." Aplt. App. at 438.

tortious interference claim against the second employee defendant, leaving only the ADA claim against EMS.

### 3. Motions for Summary Judgment, to Enlarge Time, and to Amend

The parties began deposing witnesses on March 20, 2018. During depositions, EMS's counsel told Ms. Tesone's attorney that without expert evidence regarding her disability, Ms. Tesone's ADA claim must fail. The next day, Ms. Tesone's attorney emailed EMS's counsel, stating, "I expect to file a motion for the enlargement of time to appoint and disclose experts." Supp. App. at 68.

On July 20, 2018, EMS moved for summary judgment, arguing in part that Ms. Tesone could not establish a prima facie case of discrimination because she "offer[ed] no expert report or other admissible evidence establishing that her impairment caused limitations to perform a major life activity." Aplt. App. at 23. On November 1, 2018, the parties had a settlement conference before a magistrate judge,[8] who informed Ms. Tesone that she could not prevail without an expert witness. The same day, Ms. Tesone filed a motion for an enlargement of time to designate an expert witness. Six days later, she also filed a motion to amend her complaint to add ADA claims alleging (1) discrimination on the basis of a perceived disability and (2) retaliation.

---

[8] The parties appeared before this judge for the purposes of the settlement conference only. A different magistrate judge ruled on EMS's summary judgment motion.

7

4. **District Court Rulings**

At the final pretrial conference on November 8, 2018, EMS's attorney stated that "[t]he motion to amend the complaint . . . wreaks [sic] of an attempt to save the case . . . at the 11th hour." *Id.* at 525. The district court responded, "Well, of course, it doesn't wreak of it. . . . [I]t is that." *Id.* The court then denied Ms. Tesone's motion for enlargement of time, reasoning: "I think I'm probably overly generous in extending deadlines . . . because I like to protect a plaintiff's rights, but I don't have any choice here. . . . I can't find a legal basis to grant [it], so therefore . . . [the] motion for extension of time to designate an expert witness, is denied." *Id.* at 534.[9]

On January 17, 2019, the district court issued an order denying Ms. Tesone's motion to amend. The order briefly explained the court's basis for denying the motion to extend the expert disclosure deadline, stating, "I denied the motions . . . concluding that [Ms. Tesone] could not demonstrate the 'good cause' necessary to amend the Scheduling Order under Rule 16(b)(4)." *Id.* at 551. It then explained that "there is no material difference in the delay to bring these claims and the failure to designate an expert witness." *Id.* at 552. The court noted "no reason why [Ms. Tesone] could not have asserted her claims in the Complaint." *Id.* at 554. It also concluded that Ms. Tesone's proposed retaliation amendment would be futile because Ms. Tesone did not exhaust her administrative remedies by filing a retaliation claim

---

[9] The court did not rule from the bench on the motion to amend or the motion for summary judgment.

8

with the EEOC. It thus denied the motion to amend, finding that Ms. Tesone "[had] not shown good cause to modify the Scheduling Order under Rule 16(b)(4)." *Id.* at 555.

The same day, the court also granted EMS's motion for summary judgment. It noted that Ms. Tesone bore the burden "to establish a prima facie case of discrimination," *id.* at 560, and stated that she "will not be able to" do so, *id.* at 557. It determined she had not carried this burden because she "presented no expert medical evidence that any of her major life activities have been substantially limited by her alleged disability." *Id.* at 561 (quotations omitted). The court noted that Ms. Tesone provided a doctor's note describing her disability but said "this note [was] not accompanied with an affidavit and therefore [was] inadmissible hearsay." *Id.* at 562. It also cited *Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014), in which a plaintiff who failed to provide expert medical evidence was unable to establish that she had a disability as defined in the ADA. The court concluded that "[Ms. Tesone's] case suffers from the same deficiency as the plaintiff's case in *Felkins*" and thus found "summary judgment [was] appropriate." Aplt. App. at 562.

The district court entered its final judgment on January 17, 2019, and Ms. Tesone timely appealed.

## II. **DISCUSSION**

In the following discussion of the three issues that Ms. Tesone raises on appeal, we affirm the district court's denial of her motions to (A) enlarge the time to designate an expert witness and (B) amend her complaint. We reverse (C) the district

9

court's grant of EMS's motion for summary judgment and remand for further proceedings on that issue.

### A. *Motion to Extend Time to Disclose an Expert*

### 1. **Standard of Review**

"We review a court's refusal to enter a new scheduling order for abuse of discretion." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011); *see also Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996) (same).

### 2. **Legal Background**

Federal Rule of Civil Procedure 16(b)(4) provides that scheduling orders "may be modified only for good cause and with the judge's consent." "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch*, 771 F.3d at 1241 (quotations and alterations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party."). "Good cause" also "obligates the moving party to provide an adequate explanation for any delay." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (quotations omitted).

"[T]rial courts have considerable discretion in determining what kind of showing satisfies this . . . good cause standard." 3 James Wm. Moore, Moore's Federal Practice - Civil § 16.14[1][b] (3d ed. 2019). In making this determination, "the factor on which courts are most likely to focus . . . is the relative diligence of the lawyer . . . who seek[s] the change." *Id.* "'[G]ood cause' is likely to be found when

10

the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id.*

"Another relevant consideration is possible prejudice to the party opposing the modification." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.").

"[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation" also "should not be considered good cause." *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) (quotations omitted).

3. **Analysis**

Ms. Tesone has not made the "good cause" showing required under Rule 16(b)(4). She failed to "show the scheduling deadlines [could not] be met despite [her] diligent efforts." *Gorsuch*, 771 F.3d at 1241 (quotations omitted). The district court thus did not abuse its discretion in denying Ms. Tesone's motion to enlarge time to designate an expert witness.

The district court set a February 5, 2018 deadline for disclosure of expert witnesses. Ms. Tesone did not disclose an expert by that date. Although on March

11

20, 2018, she expressed her intent "to file a motion," she did not do so until November 1, 2018—nine months after the February 2018 expert disclosure deadline, seven months after indicating her intent to file, and three months after EMS's motion for summary judgment.

Ms. Tesone provides no "adequate explanation" for this delay. *Husky Ventures*, 911 F.3d at 1020. She also does not show that she made "diligent efforts" to meet the disclosure deadline. *Gorsuch*, 771 F.3d at 1241. Rather, the record shows Ms. Tesone missed the initial deadline, expressed an intent to file a motion to extend time, and then inexplicably waited for seven months to file her motion. Her lack of "diligent efforts," *id.*, and unjustified "failure . . . to proceed promptly with . . . trial preparation," *Dag Enters.*, 226 F.R.D at 105, do not constitute good cause.

Because Ms. Tesone has not shown that she made diligent efforts to meet the expert disclosure deadline and because she provides no explanation for her belated motion, she has not demonstrated the "good cause" necessary to modify a scheduling order under Rule 16(b)(4). The district court did not abuse its discretion in denying her motion to extend time. We affirm its ruling.

### B. *Motion to Amend Complaint*

The district court denied Ms. Tesone's motion to amend because she failed to meet the requirements under Federal Rules of Civil Procedure 15(a) and 16(b)(4). We affirm based on Ms. Tesone's failure to satisfy Rule 16(b)(4).

12

1. **Standard of Review**

"We review a denial of leave to amend a complaint for abuse of discretion." *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018); *see also Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). "A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable." *Bylin*, 568 F.3d at 1229 (quotations omitted).

2. **Legal Background**

As discussed above, Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Rule 15(a)(2) states that "[t]he court should freely give leave [to amend pleadings] when justice so requires." A party seeking leave to amend after a scheduling order deadline must satisfy both the Rule 16(b) and Rule 15(a) standards. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." (quotations omitted)).

"If [the movant] fail[s] to satisfy either factor—(1) good cause or (2) Rule 15(a)—the district court [does] not abuse its discretion in denying [her] motion for leave to amend." *Gorsuch*, 771 F.3d at 1241. Thus, "if [the movant] fail[s] to show good cause under Rule 16(b), there is no need for the Court to move on to the second step of the analysis, i.e., whether [the movant] [has] satisfied the requirements of Rule 15(a)." *Carriker v. City & Cty. of Denver*, No. 12-cv-02365-WJM-KLM, 2013

13

WL 2147542, at *2 (D. Colo. May 16, 2013) (unpublished); *see also Birch*, 812 F.3d at 1249 (finding "no need to consider whether Appellants satisfied Rule 15" where the appellants "cannot establish 'good cause' under Rule 16"); *Gorsuch*, 771 F.3d at 1242 (declining to reach Rule 15(a) issue where movants could not show good cause to amend their pleadings under Rule 16(b)).

The Rule 16(b)(4) analysis is the same for a motion for leave to amend as for a motion to enlarge time. Again, "the movant [must] show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Birch*, 812 F.3d at 1247 (quotations and alterations omitted); *see also Gorsuch*, 771 F.3d at 1240. "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Birch*, 812 F.3d at 1247 (quoting *Gorsuch*, 771 F.3d at 1240). "If the plaintiff knew of the underlying conduct but simply failed to raise tort claims, however, the claims are barred." *Id.*

3. **Analysis**

Ms. Tesone sought leave to amend her complaint to add claims for retaliation and discrimination based on a perceived disability. She filed her motion on November 7, 2018—nearly ten months after the court's January 22, 2018 amendment deadline. At district court, she attributed this delay to her attorney's "lack of experience and knowledge at the beginning of the litigation." Aplt. App. at 471 (Ms. Tesone's Reply to EMS's Response to the Motion for Leave to Amend). She also argued that her proposed amendments were based on new information—namely, deposition testimony that EMS "discussed firing Ms. Tesone . . . only after she made

14

an oral request for accommodations." *Id.* at 470. The district court found these explanations unpersuasive, stating, "I see no reason why [Ms. Tesone] could not have asserted her claims in the Complaint." *Id.* at 554.

The district court did not abuse its discretion in rejecting Ms. Tesone's explanations. Although Ms. Tesone insists "it wasn't until the final deposition, which occurred almost a month after the original discovery deadline, that [she] gathered additional evidence to support a claim for retaliation," Aplt. Br. at 23-24, her own briefing admitted that "the facts giving rise to her [proposed] retaliation claim and perception claim *were included in her original complaint*," Aplt. App. at 472 (Ms. Tesone's Reply to EMS's Response to the Motion for Leave to Amend) (emphasis added). This admission undermines her argument that she lacked evidence to support a retaliation claim until after the amendment deadline.

Ms. Tesone also argues "she sought an amendment to add [a perceived disability claim] after the district court magistrate assigned to mediate this case told her counsel that [the disability claim], as pled, would absolutely fail." Aplt. Br. at 27. But she also has admitted that EMS informed her as early as March 2018 that her disability claim could not succeed without an expert. *See* Aplt. App. at 526-27. She could have sought leave to add a perceived disability claim when she first learned of this deficiency. She offers no explanation for why she waited until November to do so.

In short, the record shows—and Ms. Tesone admits—that she "was aware of the facts on which the amendment was based for some time prior to the filing of the

15

motion to amend." *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). The record also shows—and Ms. Tesone admits—that she knew she might need to add a perceived disability claim as early as March 2018. Despite this, she did not move to amend her pleadings until November. She provides no "adequate explanation[s]" for this delay, *Husky Ventures*, 911 F.3d at 1020, and does not "show the scheduling deadlines [could not] be met despite [her] diligent efforts," *Gorsuch*, 771 F.3d at 1241 (quotations and alterations omitted).

We affirm the denial of Ms. Tesone's motion to amend because the district court did not abuse its discretion in finding she "[did] not show[] good cause to modify the Scheduling Order under Rule 16(b)(4)." Aplt. App. at 555.

## C. *Summary Judgment*

Ms. Tesone argues that she was not required to establish her disability through expert medical evidence and that her failure to provide an expert witness did not entitle EMS to summary judgment. EMS insists we should not address this argument because Ms. Tesone has raised it for the first time on appeal. We disagree. The general rule that an appellant has forfeited an issue raised for the first time on appeal does not apply when the district court relied on that issue to rule against the appellant. On the merits, the district court erred when it granted summary judgment to EMS on the ground that Ms. Tesone did not present expert evidence to establish her disability.

16

1. **Waiver and Forfeiture**

   a. *Legal background*

Two doctrines—forfeiture and waiver—limit our ability to consider arguments on appeal. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). It "comes about when a party deliberately considers an issue and makes an intentional decision to forego it." *United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019). "[A] party that has waived [an argument] is not entitled to appellate relief." *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006). "If [a] theory was intentionally relinquished or abandoned in the district court, we . . . refuse to consider it" on appeal. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011).

Forfeiture, by contrast, occurs when an appellant presents an argument on appeal that "simply wasn't raised before the district court." *Id.* at 1128. "Unlike waived theories, we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Id.* In other words, "arguments raised for the first time in a civil appeal may be reviewed only for plain error." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1151 (10th Cir. 2012) (citing *Richison*, 634 F.3d at 1128).

This forfeiture rule does not apply when the district court explicitly considers and resolves an issue of law on the merits. In that circumstance, "the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to

17

raise the issue in district court." *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003). This is because "[a]ppellate courts can reach issues that were either 'pressed' by the appellant before, or 'passed upon' by, the lower court." *United States v. Verner*, 659 F. App'x 461, 466 (10th Cir. 2016) (unpublished) (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)). A court "passes upon" an issue when it applies "the relevant law to the relevant facts." *Id.* (citation omitted). An appellate court is therefore "permit[ed] review of an issue not pressed so long as it has been passed upon." *Williams*, 504 U.S. at 41.

When a district court has "passe[d] upon" an issue, "review on appeal is not for 'plain error,' but is subject to the same standard of appellate review that would be applicable if the appellant had properly raised the issue." *Hernandez-Rodriguez*, 352 F.3d at 1328.

   b. *Analysis*

Ms. Tesone argues on appeal that she is not required to present expert medical evidence to establish her disability. She did not present this argument to the district court. In her complaint, she simply alleged that she "was a qualified individual with one disability of lower back pain" and that "[EMS] discriminated against [her] . . . because of her disability." Aplt. App. at 5. In her response to EMS's motion for summary judgment, she argued she provided the necessary "medical documentation" to "demonstrate[] that she does have a disability as defined by the ADA." *Id.* at 194-95. She did not argue that expert medical testimony was unnecessary but instead asserted that her own evidence—a doctor's letter—was sufficient.

18

Ms. Tesone's motion for an enlargement of time similarly did not argue that expert testimony is unnecessary to establish an ADA disability. In fact, the motion effectively conceded that an expert was necessary to establish an ADA disability. *See id.* at 350 (explaining that Ms. Tesone's counsel's "[f]ailure to know that an expert was required did not appear to fit into the category of excusable neglect"); *id.* at 351 (noting that at the time of filing, counsel believed that "the evidence in her medical file [did] demonstrate that she had a back impairment, and that it did affect a major life activity," but "[counsel] now believes . . . that not having an expert to testify regarding Ms. Tesone's physical impairments would almost certainly be fatal to [her] case").[10]

---

[10] Neither party invokes the invited error doctrine on appeal. Ms. Tesone's statement "that not having an expert . . . would almost certainly be fatal to her case," Aplt. App. at 351, was not invited error when placed in context.

"The invited error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." *United States v. Morrison*, 771 F.3d 687, 694 (10th Cir. 2014) (quotations omitted). In the typical invited error scenario, a party "*induce*[*s*] the district court to do [some]thing it would not otherwise have done," *id.*, and later attempts to challenge the "proposition that [it] . . . urged the district court to adopt," *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005).

Ms. Tesone has not done this. Although her motion to extend time acknowledged that proceeding without an expert would "almost certainly be fatal," Aplt. App. at 351, she never "willingly adopted," *United States v. Rodebaugh*, 598 F.3d 1281, 1304 (10th Cir. 2015), or "affirmatively approv[ed]," *United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012), the position that expert witness testimony is always required to establish an ADA disability. She also did not attempt to convince the district court to adopt that position. In fact, she acknowledged the need for an expert only because, during settlement discussions, the magistrate judge stressed the need for expert testimony. *See, e.g.*, Aplt. App. at 351 (statement in Ms. Tesone's motion to extend time that her desire to designate an expert was "due in large part to the settlement discussions . . . which included discussions with Judge

19

Because Ms. Tesone did not present her argument about expert medical testimony to the district court, we would generally hold it forfeited and would review it only for plain error. Here, however, the district court "explicitly" determined that expert testimony is required to establish disability under the ADA. *Hernandez-Rodriguez*, 352 F.3d at 1328. In its order granting summary judgment for EMS, the court stated that Ms. Tesone could not establish a prima facie case of discrimination "because she has presented no expert medical evidence that any of her major life activities have been substantially limited by her alleged disability." Aplt. App. at 561 (quotations omitted). It also cited *Felkins* for the proposition that "expert medical evidence" is an "*element* of the prima facie case [of disability discrimination]." *Id.* at 561-62 (emphasis added). The court granted summary judgment on the ground that "[Ms. Tesone's] case suffer[ed] from the same

---

Mix"). If anything, the court instructed Ms. Tesone's counsel that he must obtain an expert to salvage his case, not the other way around.

Ms. Tesone may have accepted the magistrate judge's instruction that she needed an expert witness, but she did not "affirmatively approve[]" the position that the ADA always requires expert testimony. *Cornelius*, 696 F.3d at 1319. Nor did she "*induce* the district court to do anything it would not otherwise have done." *Morrison*, 771 F.3d at 694. This case thus presents the inverse of the typical invited error scenario, so the doctrine does not apply.

EMS also does not argue judicial estoppel, nor does it apply. *See BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1240 (10th Cir. 2015) ("[J]udicial estoppel only applies when the position to be estopped is one of fact, not one of law."); *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (listing judicial estoppel factors and noting that "judicial estoppel is applied in the narrowest of circumstances" (quotations omitted)).

deficiency as the plaintiff's case in *Felkins*"—namely, a lack of "expert medical evidence." *Id.*

The district court thus "passed upon" the argument that Ms. Tesone now urges on appeal. *Williams*, 504 U.S. at 41.[11] We therefore may review the argument even though Ms. Tesone did not present it to the district court.[12]

---

[11] After oral argument, counsel for EMS submitted a Rule 28(j) letter containing supplemental authority "on whether an appellant who challenges Circuit precedent must raise that challenge in the district court to preserve it for appeal." Doc. 10681136. The cited cases do not change our analysis.

[12] Moreover, Ms. Tesone did not waive the argument. As discussed above, waiver "comes about when a party deliberately considers an issue and makes an intentional decision to forego it." *Malone*, 937 F.3d at 1327. At summary judgment, Ms. Tesone argued that she "was able to provide . . . evidentiary support" to establish her disability. Aplt. App. at 194-95. But she did not suggest that the evidence she provided qualified as expert evidence, and she did not claim that expert evidence was necessary. Because of this, we cannot say that she "deliberately consider[ed] [the] issue and ma[de] an intentional decision to forego it." *Malone*, 937 F.3d at 1327.

Although Ms. Tesone did not advance arguments about expert testimony at summary judgment, she did, in her motion to enlarge time, acknowledge that she needed an expert. As previously explained, Ms. Tesone made this statement in large part because the magistrate judge instructed her that she could not prevail without expert testimony. We do not think the statement shows that Ms. Tesone "deliberately consider[ed] [the] issue and ma[de] an intentional decision to forego it." *Id.* But even if her motion to enlarge time could be viewed as a waiver, we would, given the magistrate judge's statements and the strictly legal issue on appeal—whether an expert is required in all ADA cases—exercise our discretion to address the argument. *See Maralex Res., Inc. v. Barnhardt*, 913 F.3d 1189, 1197 (10th Cir. 2019) ("We have held . . . that we may depart from general waiver principles 'particularly when we are presented with a strictly legal question . . . .'"); *see also United States Nat'l Bank of Oregon v. Indep. Agents of Am., Inc.*, 508 U.S. 439, 447-48 (1993) (noting appellate court's discretion to consider waived argument).

21

2. **Summary Judgment Standard of Review**

"[W]e review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (quotations omitted). In doing so, "we consider the evidence in the light most favorable to the non-moving party." *Id.* (quotations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Where, as here, the burden of persuasion at trial would be on the nonmoving party, the movant may carry its initial burden by providing "affirmative evidence that negates an essential element of the nonmoving party's claim" or by "demonstrat[ing] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331.

If the movant makes this showing, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the nonmovant "fails to make a showing sufficient to establish the existence of an element," the Federal Rules of Civil Procedure "mandate[] the entry of summary judgment." *Celotex*, 477 U.S. at 322.

22

3. **Legal Background**

The following provides background on (a) the ADA and ADAAA, (b) the elements of an ADA claim, and (c) when expert evidence is necessary to establish an ADA disability.

a. *The ADA and ADAAA*

In 1990, Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Americans with Disabilities Act of 1990, Pub. L. No. 101-336, § 2(b)(1), 104 Stat. 327 (codified as amended at 42 U.S.C. § 12101 *et seq.*). The Act defined disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). It "prohibit[ed] discrimination by covered entities, including private employers, against qualified individuals with a disability." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477 (1999).

In 2008, Congress passed the ADA Amendments Act ("ADAAA"), which was designed to "reinstat[e] a broad scope of protection to be available under the ADA." Pub. L. No. 110-325 § 2(b)(1), 122 Stat. 3553 (2008). The ADAAA preserved the ADA's definition of "disability" but made it easier for plaintiffs to show that an impairment "substantially limits one or more major life activities." *See* 29 C.F.R. § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage. . . . 'Substantially limits' is not meant to be a demanding

23

standard."); *id.* § 1630.2(j)(1)(iii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."). For simplicity, we refer to the amended Act simply as "the ADA."

   b. *ADA claim*

The ADA, as amended, requires proof that the plaintiff: "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *C.R. Eng., Inc.*, 644 F.3d at 1037-38.

An ADA plaintiff may prove discrimination by providing direct evidence of discriminatory conduct. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1150 (10th Cir. 2011). "In order to be direct, evidence must prove the existence of a fact in issue without inference or presumption." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1188 n.6 (10th Cir. 2007) (quotations omitted). Such evidence might include an employer's adoption of a facially discriminatory policy. *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (finding direct evidence of discrimination where employer adopted policy restricting transfer opportunities for employees above a certain age); *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 715 (1978) (finding direct evidence of discrimination where employer adopted policy requiring female employees to contribute more to pension fund than male employees). "[O]ral or written statements on the part of a defendant showing a

24

discriminatory motivation" may also constitute direct evidence of discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

Where, as here, there is no direct evidence of discrimination, a plaintiff may instead rely on circumstantial evidence. *See Carter*, 662 F.3d at 1150; *see also Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). "If a plaintiff offers no direct evidence of discrimination, which is often the case, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *C.R. Eng.*, 644 F.3d at 1038 (citation altered). This analysis has three steps. First, the plaintiff must make out a prima facie case of discrimination by demonstrating the three elements described above. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Then the "burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802-03). "If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.'" *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804-05).

The summary judgment ruling in this case focused on the first element of a prima facie case of discrimination. This element requires the plaintiff to meet the statutory definition of "disability" in 42 U.S.C. § 12102(1). When the claim is for discrimination based on an actual disability, the plaintiff must show "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA does not define "physical or mental impairment," but an EEOC regulation specifies that the terms encompass "[a]ny

25

physiological disorder, or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, [or] digestive . . . ." 29 C.F.R. § 1630.2(h)(1). The regulation also states that "[a]n impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii).

  c.  *Necessity of expert testimony*

As just explained, "[a]n impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii). The ADA regulations specify that "[t]he comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis." *Id.* § 1630.2(j)(1)(v). But the regulations do not "prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate." *Id.*

Expert medical testimony may be used to establish a plaintiff's disability. *See, e.g.*, *Carter*, 662 F.3d at 1142 (holding that plaintiff "established that he had a physical impairment within the meaning of the ADA" by "submitt[ing] medical testimony"); *see also Cook v. R.I. Dep't of Mental Health, Retardation, and Hosps.*, 10 F.3d 17, 23 (1st Cir. 1993) (noting that "the jury could plausibly have found that plaintiff had a physical impairment" because "she presented expert testimony that

26

morbid obesity is a physiological disorder"). But "[n]o language in the ADA or implementing regulations states that medical testimony is required," *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 643 (7th Cir. 2010), and "[t]here is certainly no general rule that medical testimony is always necessary to establish disability," *Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir. 1996). Rather, "[w]hether medical evidence is necessary to support a disability discrimination claim is a determination that must be made on a case-by-case basis." *Mancini v. City of Providence*, 909 F.3d 32, 39 (1st Cir. 2018).

Courts generally require expert evidence when "a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition." *Id.* at 41 (citing *Felkins*, 774 F.3d at 648, 652); *see also Katz*, 87 F.3d at 31 n.4 ("[W]here it is not obvious to a lay jury that the condition affects one of the bodily systems listed in the regulations, expert testimony that it does may well be necessary to avoid a judgment as a matter of law.").

In *Felkins*, for example, the plaintiff claimed her employer refused to accommodate her avascular necrosis—a "rare condition that can cause bone tissue to die from poor blood supply." 774 F.3d at 648. But aside from her own declarations, the plaintiff offered no medical evidence to confirm her diagnosis. *See id.* at 651 (noting that the medical evidence in the record contained "no mention of avascular necrosis, much less a description of its effects on Ms. Felkins"). Because she lacked expert medical evidence of her condition, the district court granted summary judgment for the defendants.

27

On appeal, we explained that "a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person." *Id.* at 652 (quoting *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957)).[13]  But we noted that "where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts." *Id.* (quoting *Franklin*, 250 F.2d at 97) (alterations omitted).  We concluded that the plaintiff's avascular necrosis was "beyond the realm of common experience" and thus "require[d] the special skill and knowledge of an expert witness." *Id.* (quotations omitted).

By contrast, when a plaintiff alleges an impairment "that a lay jury can fathom without expert guidance," courts generally "do not require medical evidence" to establish an ADA disability.  *See Mancini*, 909 F.3d at 42.  In *Mancini*, for example, the First Circuit held that "medical evidence was not required to establish that [the plaintiff's] knee injury constituted an impairment" because "a lay jury can fathom [a knee injury] without expert guidance." *Id.*  And in *Marinelli v. City of Erie, Pa.*, 216 F.3d 354 (3d Cir. 2000), the Third Circuit held that a plaintiff's "failure to present medical evidence of his [arm and neck pain], in and of itself, [did] not warrant judgment as a matter of law in favor of the [defendants]" because "arm and neck pain . . . are among those ailments that are the least technical in nature and are the most

---

[13] *Franklin v. Shelton* was not an ADA case.  However, in *Felkins*, we held that the evidentiary principles articulated in *Franklin* "apply, of course, to ADA claims." *Felkins*, 774 F.3d at 652.

28

amenable to comprehension by a lay jury." *Id.* at 361. The Seventh Circuit similarly declined to require expert medical evidence where a plaintiff suffered from a back injury because he "described in detail the limitations [he] faced in his ability to care for himself." *AutoZone*, 630 F.3d at 644.

4. **Analysis**

As noted above, to prove the first element of a prima facie case of disability discrimination, the plaintiff must show "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). This element includes proof of the impairment itself and that the impairment limits a major life activity.[14] *See Carter*, 662 F.3d at 1142 (noting that to establish a disability, an ADA plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities" (quotations omitted)).

The district court granted summary judgment for EMS because it found Ms. Tesone "presented no expert medical evidence that any of her major life activities have been substantially limited by her alleged disability," Aplt. App. at 561 (quotations omitted), and therefore "[would] not be able to present evidence to establish a prima facie case for disability discrimination," *id.* at 557. As explained

---

[14] 42 U.S.C. § 12102(2)(A) specifies that "major life activities include . . . lifting."

below, this ruling was legally erroneous because expert medical evidence is not required to establish a disability in all ADA cases.

On page two of its six-page order, the district court said, "[T]he Tenth Circuit requires the testimony of an expert to establish a prima facie case of a disability under the ADA. Therefore, [Ms. Tesone] cannot meet the prima facie case for her claim, and it must therefore fail." *Id.* at 558. This passage states the basis for the court's ruling. It is legally erroneous.

As explained above, "[n]o language in the ADA or implementing regulations states that medical testimony is required," *AutoZone, Inc.*, 630 F.3d at 643, and "[t]here is certainly no general rule that medical testimony is always necessary to establish disability," *Katz*, 87 F.3d at 32. Instead, courts assess the necessity of expert evidence on a case-by-case basis and consider the type of disability alleged. *See Mancini*, 909 F.3d at 39. Courts generally require expert testimony only if an impairment is "rare" or "of such character as to require skilled and professional persons to determine the cause and extent thereof." *Felkins*, 774 F.3d at 652 (quotations omitted). But when an impairment or disability is "obvious," *Katz*, 87 F.3d at 32, or can be "fathom[ed] without expert guidance," *Mancini*, 909 F.3d at 42, courts generally do not require expert testimony. *See also* 6 Jones on Evidence § 52:1 (7th ed. 2019) ("To determine whether expert testimony is required to establish . . . an element . . . of a medically-related cause of action, courts consider whether the subject . . . is one within the realm of the ordinary experience of

30

mankind . . . .  If it is beyond the ken of a lay jury, . . . then the plaintiff must present expert testimony . . . ." (quotations omitted)).

Despite this clear guidance, the district court stated that "the Tenth Circuit requires the testimony of an expert to establish a prima facie case of a disability under the ADA."  Aplt. App. at 558.  The court cited *Felkins* in support.  It described *Felkins* as follows:

> In that case, the plaintiff brought a disability discrimination claim against her former employer under the ADA.  [774 F.3d] at 648–49.  However, the only evidence she presented of her disability was "a Family and Medical Leave Act (FMLA) document . . . indicating that [the plaintiff] had received hospital care but did not have a chronic condition," and a note from physician assistant "stating only 'Return to work full duty [on a certain date].'"  *Id.* at 648.  She also "submitted a declaration under penalty of perjury asserting that her [alleged disability] caused her [injury]."  *Id.* at 649.  The Tenth Circuit held that the plaintiff did not "present sufficient evidence to prove . . . that she has a condition . . . that substantially limits a[] . . . major life activit[y]."  *Id.* at 651.  It did so, because the plaintiff "presented no expert medical evidence" of the alleged disability.  *Id.* at 648.  Considering this element of the prima facie case was lacking, the Tenth Circuit affirmed the district court's decision to grant summary judgment to the defendant.  *Id.* at 653.

*Id.* at 561-62.  The court then said that "[Ms. Tesone's] case suffers from the same deficiency as the plaintiff's case in *Felkins*."  *Id.* at 562.

We disagree with the district court's reading of *Felkins*.  In *Felkins*, we did not hold that an expert is always necessary to establish a prima facie ADA discrimination

case. Instead, we gave examples of when lay testimony on health conditions may be appropriate and quoted with approval the following principles:

> [W]here injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts, but . . . a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person.

*Felkins*, 774 F.3d at 652 (quoting *Franklin*, 250 F.2d at 97); *see also id.* ("These evidentiary principles apply, of course, to ADA claims."). The *Felkins* panel went on to say that "Ms. Felkins's declarations are admissible insofar as they describe her injuries and symptoms, such as pain and difficulties walking, standing, and lifting." *Id.* But the special skill and knowledge of an expert was needed to "diagnose her condition as avascular necrosis." *Id.*

*Felkins* and this case reflect why courts should conduct a case-by-case analysis to determine whether expert testimony is required to establish an ADA disability. In *Felkins*, the plaintiff suffered from avascular necrosis, a rare bone condition. Here, by contrast, Ms. Tesone alleges she suffers from a back injury that impairs her ability to lift heavy objects. Unlike avascular necrosis, a back injury may not be "beyond the realm of common experience" and may not "require the special skill and knowledge of an expert witness." *Felkins*, 774 F.3d at 652. Rather, a back injury could be "among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury." *Marinelli*, 216 F.3d at 361. Like "arm and neck pain," *id.*, or a "knee injury," *Mancini*, 909 F.3d at 42, a back injury might

32

fall "within the universe of impairments that a lay jury can fathom without expert guidance," *id.* Such "conditions do not require medical evidence in an ADA case." *Id.* Indeed, we said that Ms. Felkins's declarations about "pain" from her "injuries" and "difficulties" with "lifting" were "admissible." *Felkins*, 774 F.3d at 652.

The district court did not perform this case-specific analysis to determine whether expert testimony is necessary to establish the particular disability alleged here. Instead, it announced a broad, categorical rule that expert proof of disability is required in all ADA cases. This ruling contradicts the weight of ADA authority holding that "[t]here is certainly no general rule that medical testimony is always necessary to establish disability," *Katz*, 87 F.3d at 32, and that the necessity of such evidence should be assessed "on a case-by-case-basis," *Mancini*, 909 F.3d at 39. We therefore reverse the summary judgment ruling and remand to the district court for a case-specific consideration of whether expert evidence is required.

a. *Summary judgment evidence on remand*

Because we remand, we offer an additional point for the district court's consideration. In the order granting summary judgment, the court addressed the previously described letter from Dr. Brian Manjarres, which stated that Ms. Tesone "has certain limitations related to muscle weakness" and "chronic lower back pain." Aplt. App. at 139. Citing *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir.

2005), the court refused to consider the note, explaining that it was "not accompanied with an affidavit and therefore is inadmissible hearsay." *Id.*[15]

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial," but "the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quotations omitted); *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Courts have held that an unsworn doctor's note is inadmissible hearsay and cannot be used to oppose summary judgment. *See, e.g.*, *Wilkerson v. Schirmer Eng'g Corp.*, No. 04CV00258 WDM/OES, 2006 WL 228818, *6 (D. Colo. Jan. 30, 2006) ("Wilkerson attempts to show that she is disabled through a letter from her doctor and statements in her verified complaint. Clearly, the letter from her doctor is inadmissible hearsay, and should not be considered.").

But *Capobianco v. City of New York*, which the district court relied on for its ruling, held that an unsworn doctor's note *can* be considered when the defendants attached the note to their motion for summary judgment and relied on it in arguing

---

[15] "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form." 11 James Wm. Moore et al., Moore's Federal Practice - Civil § 56.91 (3d ed. 2015) (collecting cases); *see also* Fed. R. Civ. P. 56(c)(2) adv. comm. cmt. ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

34

for summary judgment. 422 F.3d 47 at 55. The district court here omitted the

following relevant analysis from *Capobianco*:

> The district court held that Dr. Brodie's letters were "inadmissible as unsworn statements and inadequate as a basis to oppose the defendants' motion for summary judgment." As a general matter, it is correct that unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 391–92 (S.D.N.Y. 1998) (physician letters in ADA case); *see also United States v. All Right, Title & Interest in Real Prop. & Appurtenances*, 77 F.3d 648, 657–58 (2d Cir. 1996) ("[T]he submission of [an] unsworn letter was an inappropriate response to the . . . motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."). Nonetheless, here it was an abuse of discretion for the district court to exclude the two letters.

> First, the letters were submitted not by Capobianco but by defendants, in support of their motion for summary judgment. They were attached as exhibits to defendants' Rule 56.1 Statement and were part of defendants' moving papers. Defendants cited both letters and relied on them in seeking summary judgment. Hence, defendants waived any objections to the admissibility of the reports by offering them themselves. *See* 10A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2722, at 384–85 (3d ed. 1998) ("[U]ncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived.") (footnote omitted); *see also* Fed. R. Evid. 801(d)(2)(B) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth[.]"). Neither side objected to the admissibility of the reports, and, indeed, both sides relied on them.

Second, the district court's *sua sponte* decision to exclude the reports prejudiced Capobianco. Because defendants had submitted the reports initially, Capobianco reasonably believed that he could rely on them even though they were unsworn letters. With the reports apparently a part of the summary judgment record, and without notice that any issue existed as to their admissibility, Capobianco understandably did not obtain a sworn affidavit from Dr. Brodie, which presumably would have merely reiterated what was already in the letters. Had he been given notice that this was an issue, Capobianco could have obtained an affidavit easily, as Dr. Brodie had already been designated an expert and his expert report had previously been produced.

*Id.*

Whether Ms. Tesone can make a prima facie case of a disability, and whether her doctor's note can be considered at summary judgment, is open to the district court's further consideration.

## III. **CONCLUSION**

We affirm the district court's denials of Ms. Tesone's motion for an enlargement of time to designate an expert witness and of her motion to amend the complaint. We reverse the summary judgment order and remand for further consideration of summary judgment.

36