**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AL F. WILSON,

     Plaintiff - Appellant,

v.

TEXTRON AVIATION, INC.,

     Defendant - Appellee.

No. 19-3160
(D.C. No. 6:17-CV-01287-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Al F. Wilson appeals from the district court's grant of summary judgment for

his employer, Textron Aviation, Inc. ("Textron"), in his suit alleging employment

discrimination and retaliation.  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I.  BACKGROUND

## A. *Factual Background*

Textron manufactures aircraft.  In 1997, one of its predecessor companies hired Mr. Wilson, an African-American, to work as a sheet metal assembler.  In 2003, he underwent right carpal tunnel surgery and needed task rotation to avoid further injury, which Textron accommodated.  Mr. Wilson worked for a while as a final line assembler, but he returned to the sheet metal assembler position in 2012.  Todd Meadows became his supervisor.

Sheet metal assemblers could work on speed brakes, composite landing gear doors, and main landing gear doors, but Mr. Meadows refused to allow Mr. Wilson to rotate among these tasks.  Instead, he required Mr. Wilson to work primarily on the main landing gear doors, the task Mr. Wilson had worked on before his carpal tunnel surgery.

In January 2014, Mr. Wilson complained about left wrist pain to Textron's Health Services department.  In March 2014, he reported pain in his right hand, wrist, and shoulder.  A Health Services physician treated him until November 2014 and recommended task rotation, but Mr. Meadows refused.

The Network, Inc. ("TNI") operates Textron's Ethics and Compliance Hotline (the "Hotline").  TNI answers Hotline calls and reports to Textron.  On November 17, 2014, Mr. Wilson called the Hotline.  Textron Human Resources Manager Jan Chapmon received TNI's report shortly thereafter.  The report documented that (1) Mr. Wilson had complained about problems with his hand; (2) Mr. Meadows had

refused to move him or allow him to rotate among tasks; (3) Mr. Wilson had called the Hotline in October and complained about Mr. Meadows; (4) a company representative had met with the two on November 14; (5) after that meeting, Mr. Meadows had criticized Mr. Wilson's performance and had taken him to Human Resources for a meeting; and (6) Mr. Wilson thought Mr. Meadows was retaliating against him. Ms. Chapmon investigated the report and concluded that (1) Mr. Meadows was not retaliating against Mr. Wilson and (2) Mr. Wilson was not working beyond his restrictions. TNI's report did not mention race discrimination, but Mr. Wilson asserts that during the call he also had complained about race discrimination.

Between October 2014 and March 2015, various Textron employees evaluated Mr. Wilson's medical issues and potential job accommodations. In January 2015, he underwent a functional capacity evaluation ("FCE") that assessed an "occasional" restriction on forceful grasping, fine hand manipulation, and simple grasping. The FCE also assessed a "never" restriction for reaching above the shoulder and a "frequent" restriction on pushing and pulling.

A collective bargaining agreement ("CBA") limited Textron's options in placing Mr. Wilson. Under the CBA, Textron could consider him only for positions that he already had held—sheet metal assembler and assembly installer (the latter had replaced final line assembler). Textron's representatives determined those positions required tasks that could accommodate the restrictions on reaching overhead and pushing and pulling, but not the other restrictions. All of the sheet metal assembler

3

and assembly installer tasks required more than "occasional" fine hand manipulation and simple grasping. Textron concluded it could not accommodate Mr. Wilson's medical restrictions without violating the CBA. On March 9, 2015, it put him on unpaid medical leave which lasted until May 2016, when he was cleared to return to work as a sheet metal assembler.

## B. *Procedural Background*

After pursuing his administrative remedies, Mr. Wilson sued Textron for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, disability discrimination under the Americans with Disabilities Act ("ADA"), and retaliation under Title VII and the ADA. After discovery and briefing, the district court granted Textron's motion for summary judgment on all claims, applying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

Regarding the race-based claims, the district court held that the March 9, 2015 unpaid leave of absence was a materially adverse employment action. But it concluded that Mr. Wilson had failed to establish a prima facie case. For the race discrimination claims, it determined the record was insufficient to establish that the leave occurred under circumstances giving rise to an inference of discrimination. And for the race retaliation claim, it held that Mr. Wilson had failed to show a causal connection between his protected activity and the leave of absence. Even crediting Mr. Wilson's assertion that he had complained to the Hotline about race discrimination as well as disability discrimination and retaliation, the court found no

4

evidence that anyone on the team who imposed the unpaid medical leave knew about any race-based complaints.

The district court also concluded that Mr. Wilson had failed to establish a prima facie case of discrimination under the ADA, holding that his January 2015 medical restrictions made him unable to perform the essential functions of the available positions, with or without accommodations. As for the ADA retaliation claim, the court held that Mr. Wilson had established a prima facie case because Textron imposed the unpaid medical leave shortly after he complained about disability discrimination. The court next determined that Textron had identified a legitimate, non-retaliatory reason for imposing the medical leave—that Mr. Wilson's increased medical restrictions precluded him from doing his job or any other job to which Textron could transfer him. It then concluded that Mr. Wilson had failed to show that Textron's proffered reason could be considered pretext for retaliation.

## II. **DISCUSSION**

We review the grant of summary judgment de novo, applying the same standards as the district court. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). "In doing so, we consider the evidence in the light most favorable to the non-moving party." *Id.* (quotations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because Mr. Wilson lacked direct evidence, the *McDonnell Douglas* framework governs his claims. *See Tesone*, 942 F.3d at 995 (ADA discrimination);

5

*Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (Title VII discrimination and retaliation); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (ADA retaliation); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015) (§ 1981).

> The *McDonnell Douglas* test involves a three-step analysis. First, the plaintiff must prove a prima facie case of discrimination. If the plaintiff satisfies the prima facie requirements, the defendant bears the burden of producing a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext.

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

## A. *Race Discrimination Claims*

The elements of a race discrimination claim brought under § 1981 or Title VII are the same. *See Lounds*, 812 F.3d at 1221. To establish a prima facie case, Mr. Wilson must show that "(1) [he] belongs to a protected class, (2) [he] suffered an adverse employment action, and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011)

The district court (1) found Mr. Wilson is a member of a protected class; (2) rejected that Mr. Meadows's treatment of Mr. Wilson qualified as an adverse employment action, but concluded the March 9, 2015 medical leave did qualify; and (3) then held Mr. Wilson had not satisfied the third element. It explained that, even assuming Mr. Meadows had racial intent, he was just one member of the team that

6

imposed the medical leave, and Mr. Wilson failed to show any racial animus by any other team member or that Mr. Meadows influenced the team's decision.

Mr. Wilson argues that he presented evidence of race discrimination, pointing to a co-worker's testimony about Mr. Meadows's treatment of Mr. Wilson relative to white workers, such as not allowing him to rotate among tasks. The district court found, however, that the unpaid medical leave was the only adverse employment action at issue[1] and that the team, not Mr. Meadows, put Mr. Wilson on leave. As the district court concluded, the record fails to support an inference that any other team member harbored racial animus or that Mr. Meadows persuaded the team to put Mr. Wilson on leave. *See Singh*, 936 F.3d at 1038 (stating that to survive summary judgment on a "cat's paw" theory of liability, a plaintiff must create a genuine issue of material fact as to whether "the subordinate's actions proximately caused the intended adverse employment action"); *see also Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 715 (10th Cir. 2014) (stating that the plaintiff had not shown "how any retaliatory motive" by subordinate employees could be imputed to employer "when the final decision to terminate him was made by [a] grievance panel"); *E.E.O.C. v.*

---

[1] Scattered statements in the opening brief suggest Mr. Wilson is trying to argue race discrimination based on Mr. Meadows's denial of task rotation. The district court, however, held that none of Mr. Meadows's supervisory actions constituted adverse employment action. Mr. Wilson's opening brief fails to challenge that determination. "The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (quotations omitted); *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

*BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 486-87 (10th Cir. 2006) (rejecting a lenient standard under which a plaintiff could satisfy causation by showing only that "an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action" (internal quotation marks omitted)).

Mr. Wilson argues that the district court's reasoning "incorrectly applies a sole cause standard rather than the correct 'motivating factor' standard." Aplt. Opening Br. at 16. But because the medical leave was a team decision, Mr. Wilson must show that Mr. Meadows's racial animus was the proximate cause of the team's decision. *See Singh*, 936 F.3d at 1038. Moreover, "[i]t is well-established in this Circuit that an employer can break the causal chain between the biased subordinate's unlawful actions and the adverse employment action by independently investigating the allegations against the employee." *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 516 (10th Cir. 2015) (quotations omitted); *see also Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1294 (10th Cir. 2013) ("[I]f the employer independently verifies the facts and does not rely on the biased source . . . then there is no subordinate bias liability."). That is what happened here.

Mr. Wilson failed to create a genuine issue of material fact as to the adequacy of the team's investigation. An outside consultant assessed the medical restrictions. On multiple occasions between October 2014 and March 2015, employees from the Health Services and Ergonomics departments, as well as other Textron employees, visited work sites to observe how the jobs were performed, assess the relevant tasks,

8

and determine whether they would fit Mr. Wilson's restrictions. The ultimate decision to impose the leave involved at least five Textron employees besides Mr. Meadows, including the Health Services and Ergonomics employees who had evaluated the job tasks.

Summary judgment was therefore appropriate.

## B. *Race Retaliation Claim*

To establish a prima facie retaliation case, Mr. Wilson "must show that (1) he engaged in protected opposition to discrimination; (2) [Textron] took action against him which a reasonable person would have found materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action." *Singh*, 936 F.3d at 1042. The district court concluded that he satisfied the first and second elements because he complained about race discrimination to the Hotline and the medical leave constituted a materially adverse action. But it rejected this claim on the third element.

The Hotline call report that TNI submitted to Ms. Chapmon about Mr. Wilson's November 2014 call does not mention race discrimination. The district court therefore concluded that Mr. Wilson had not "show[n] that anyone involved in the decision to place him on medical leave knew about his race complaints prior to that decision. Textron could not have retaliated against Wilson for racial discrimination claims of which it had no knowledge." Aplt. App. Vol. II at 435.

TNI's report documenting the November 17, 2014 complaint focuses on disability discrimination and retaliation. It does not mention race discrimination.

9

Mr. Wilson argues that because he did complain to the Hotline about race discrimination, a jury could disbelieve Textron's claim that it had no knowledge of that complaint. He points out that Textron did not investigate his allegations even after it received his administrative charge, which complained about race discrimination. But even if Mr. Wilson reported race discrimination to the Hotline, TNI omitted this from its report. Mr. Wilson's suggestion that TNI surreptitiously reported to Textron information that does not appear in its report is speculative. "[I]n opposing a motion for summary judgment, the non-moving party cannot rest on ignorance of facts, on speculation, or on suspicion," *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotations omitted).

Mr. Wilson has failed to identify sufficient evidence for a reasonable factfinder to conclude that the team knew he had complained about race discrimination. Summary judgment was therefore appropriate.

C. *Disability Discrimination Claim*

The elements of an ADA discrimination claim are that "the plaintiff (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Tesone*, 942 F.3d at 995 (quotations omitted). Mr. Wilson satisfied the first element, but the district court held that he failed to satisfy the second element. Given the medical restrictions assessed in January 2015, the court determined Mr. Wilson could not demonstrate that he was qualified, with or without reasonable

10

accommodations, to perform the essential functions of sheet metal assembler or assembly installer.

Mr. Wilson argues that Textron has failed to prove what tasks were "essential functions" of the positions and that Textron should have to show why it could not modify the job tasks to require only occasional grasping. He did not make these arguments in the district court, however, and he does not argue for plain error on appeal. We thus consider these arguments waived. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011).

Mr. Wilson also argues that he could have been accommodated through task rotation, even after the January 2015 medical restrictions. The record, however, supports Textron's position that the job tasks in the available positions exceeded the January 2015 medical restrictions regarding "occasional" fine hand manipulation and simple grasping. It was not possible for Mr. Wilson to rotate among the tasks assigned to the positions without violating his increased medical restrictions.[2]

Finally, Mr. Wilson argues that Textron failed to show that it tried to accommodate him while he was on medical leave. He does not explain why Textron would have this obligation during the medical leave. In any event, he only

---

[2] As with the race discrimination claim, scattered statements in the opening brief suggest Mr. Wilson is trying to pursue a separate disability discrimination claim based on Mr. Meadows's denial of task rotation from 2012-2014. The only possible reference by the district court to such a claim was a footnote stating that the 300-day limitations period would bar claims for conduct before December 30, 2014. Mr. Wilson does not contest this determination on appeal, and we therefore decline to consider it. *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

perfunctorily briefed this issue in the district court, and the court did not address it. His appellate briefing fails to address how the district court erred in not considering his assertion. We therefore decline to address the issue. *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (determining that claimant's argument was unpreserved because of her "perfunctory presentation" (quotations omitted)).

## D. *Disability Retaliation Claim*

The district court concluded that Mr. Wilson did not show that Textron's proffered legitimate reason for imposing the medical leave was pretext for retaliation for complaining about disability discrimination. Mr. Wilson's opening brief does not dispute this decision. He thus has waived any challenge to the grant of summary judgment to Textron on the disability retaliation claim. *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

## III. **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

12