**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER MICHAEL GUINN,

    Defendant - Appellant.

No. 22-5072

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:21-CR-00328-GMG-1)**
_____

Howard A. Pincus, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant - Appellant.

Jessica L. Wright, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with her on the brief), Richmond, Virginia, for Plaintiff - Appellee.

_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

Christopher Guinn appeals his convictions for aggravated sexual abuse and assault on the ground that the district court improperly admitted evidence of his _non_sexual abuse under Federal Rules of Evidence Rule 413, which

permits the government to introduce evidence of prior *sexual* offenses. Separately, Guinn challenges his 240-month sentence, claiming that the district court miscalculated his criminal-history category and thus applied the wrong advisory Guidelines range.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we vacate Guinn's sentence and remand for resentencing. We otherwise affirm.

## BACKGROUND

### I.    Factual Background

Guinn was charged, tried, convicted, and sentenced for sexually assaulting and strangling his pregnant girlfriend, K.F.[1] Before he dated K.F., Guinn allegedly assaulted two former girlfriends, E.B. and A.F. This appeal centers on the district court's application of Federal Rules of Evidence Rule 413 in admitting evidence proffered by the government to show that Guinn had sexually, physically, and emotionally abused his previous girlfriends. The district court admitted the women's testimony and their protective orders as exhibits.

We recount the facts as educed at trial in the chronological order of Guinn's relationships, starting with E.B.

---

[1] K.F. is Cherokee Indian. This case migrated from state court to federal court after the Supreme Court's ruling in *McGirt v. Oklahoma*, 591 U.S. __, 140 S. Ct. 2452 (2020). In district court, Guinn moved to dismiss the case, challenging K.F.'s Indian status; that motion was denied. On appeal, Guinn does not contest K.F.'s Indian status or federal jurisdiction.

## A.    E.B.

E.B. met Guinn in August 2015. They were both sixteen. E.B. described their relationship as "controlling," "isolating," and involving "[a] lot of fighting." R. vol. III, at 310. Guinn controlled E.B.'s interactions and conversations with others. E.B. stated that the relationship devolved from emotional to physical abuse. The physical abuse consisted of Guinn "grab[bing] [her] wrists," "manhandl[ing]" her, as well as "sexual abuse." *Id.* at 311.

One month into dating, E.B. and Guinn had sex for the first time. According to her, it was not consensual. Then, in January 2016, E.B. became pregnant with Guinn's child, and he moved into her parents' house with her. After Guinn moved in, the abuse intensified. Guinn continued to control E.B.'s movements; she testified that she was "supposed to" stay in her room and talk to her parents as little as possible, according to Guinn's commands. *Id.* at 330. The whole time E.B. and Guinn lived at her parents' house, Guinn would have sex with her regularly, and she now considers all those encounters to have been rapes, though she didn't realize it at the time. E.B. recalled that Guinn's advances would occasionally result in bruises, typically on her wrists and neck. The bruises came from Guinn forcibly holding E.B. by the neck and holding her hands above her head by her wrists.

E.B. gave birth to Guinn's baby in September 2016. A few months later, she filed a protective order against Guinn. On the protective order, E.B. did not check the box for "Victim of Rape," because at that time she did not believe

3

she was one. Supp. R. vol. III, at 48. E.B. testified that she didn't realize the truth of Guinn's actions until years later in therapy.

E.B. confirmed that when she filed her protective order she did not know K.F. or A.F. E.B. confirmed that she later spoke with K.F. about their children (because they were siblings), but the two never conversed about Guinn or his abusive behavior.

**B.    A.F.**

A.F. began dating Guinn in 2017. She was sixteen; Guinn was eighteen. A.F. described her relationship with Guinn as "controlling," "abusive emotionally," and in the end, "physical." R. vol. III, at 342. A.F. claimed Guinn would not let her talk to her family and forced her to shower with him. The two then broke up in June 2018. After the breakup, Guinn texted and called A.F. repeatedly and pressured her to go back to him. They resumed their relationship soon after, but the abuse continued. A.F. stated that Guinn would yell in her face and shove her.

At trial, A.F. testified to a particular incident of sexual abuse that occurred in 2017. A.F. attested that Guinn forced her to have sex despite her crying in protest. She stated that he restrained her by grabbing her hands and holding them behind her back. Guinn pushed her head into the bed making it difficult to breathe. A.F. estimated that Guinn had assaulted her more than ten times throughout their relationship. She explained that Guinn forced these

sexual interactions by holding her wrists above her head and holding her neck by the front.

A.F. filed a protective order against Guinn in July 2018. The protective order described one incident of abuse when Guinn locked A.F. in his trailer with no air conditioning, despite the oppressive heat, which forced her to panic and struggle to breathe. The order claimed that Guinn had "[t]azed" A.F. with a cattle prod in the back of the neck.[2] Supp. R. vol. III, at 55. The order also memorialized the same sexual abuse that A.F. testified to at trial.

A.F. conceded that she was familiar with K.F. and E.B. by name, but she swore that she had never spoken with either of them about Guinn.

## C.    K.F.

K.F. and Guinn began dating in August 2018, when K.F. was twenty-one and Guinn was twenty. They lived together for about six months, until February 2019, with K.F.'s two daughters from a previous marriage. Despite some good times, K.F. described the relationship as "controlling," testifying that Guinn would "go through [her] phone" and cut her off from her mother because "[h]e said he was [her] family now." R. vol. III, at 32–33. Guinn forced K.F. to let him drive her to work and take showers with him. Then in February 2019, Guinn and K.F. broke up and he kicked her and her daughters out of the house.

---

[2] A.F. testified to the trailer and cattle prod incidents at trial on direct and cross-examination.

K.F. testified that Guinn ended things because she wouldn't "go to bed with him." *Id.* at 36. The next day, K.F. discovered she was pregnant.

Before the assault charged in this case, K.F. testified, she and Guinn shared "loving" sex. *Id.* at 34. But everything changed in the early hours of March 17, 2019. The previous night, Guinn texted K.F. asking her to pick him up from a "fight night." *Id.* at 41. She obliged. When K.F. arrived to pick Guinn up, he claimed that he had been "slipped meth," but K.F. didn't believe he was intoxicated because he was not slurring his words or stumbling. *Id.* at 42–43. K.F. took Guinn back to his trailer, and he asked her to come inside. He said he wanted to rub her stomach and "talk to the baby." *Id.* at 44. K.F. confirmed that Guinn had done this before, but also that these encounters had never led to anything sexual.

Guinn led K.F. back to his bedroom. She sat on the bed, lay back, and Guinn began to rub her stomach. He then started rubbing her thigh. K.F. immediately stopped him, telling him that "if that's what was going to happen, then [she] was going to go back to [her] mom's house." *Id.* at 45. She stated plainly to Guinn that she did not want to have sex with him. But Guinn persisted. He proceeded to pull down K.F.'s pants and underwear and to grab her wrists, holding them above her head. K.F. protested. She said "no," and that she wanted to go back to her mom's house. *Id.* at 46. Guinn used his arm to restrain K.F. and told her she wasn't leaving. He then penetrated her.

6

K.F. described the assault in graphic terms.[3] K.F. stated that Guinn put his hand around her throat and applied "hard" pressure to prevent her from moving. *Id.* at 48–49. K.F. testified that she was crying as he continued to assault her. Then, she claimed to see Guinn's phone "flash" as though he had been videotaping the encounter. *Id.* at 49.

After, Guinn told K.F. that if she told anyone what happened he would come to her mom's house, rape her again, and "come and find" her and her daughters. *Id.* at 50. Guinn fell asleep, and K.F. returned to her mom's house. K.F. immediately woke her mom and told her that she needed to go to the hospital because Guinn had raped her.

## II.    Procedural Background

The government indicted and charged Guinn with two criminal counts connected to the March assault. The government charged count one under Aggravated Sexual Abuse by Force and Threat in Indian Country, 18 U.S.C. §§ 1151, 1152, and 2241(a), and count two under Assault of an Intimate/Dating Partner by Strangling and Attempting to Strangle in Indian Country, 18 U.S.C. §§ 1151, 1152, and 113(a)(8).

Before trial, the government filed a notice of intent to introduce evidence under Federal Rules of Evidence Rule 413 and Rule 404(b). The government submitted that evidence of Guinn's previous sexual assaults against E.B. and

---

[3] We convey only the facts pertinent to the legal issues raised on appeal.

A.F. was admissible under Rule 413, as prior sexual offenses similar to the one charged, and alternatively under Rule 404(b) to show motive, intent, knowledge, and absence of mistake. Guinn objected to the evidence under Rule 413 because, according to him, the women's accusations were unproved and a reasonable jury could not find them true by a preponderance of the evidence. He also objected to the evidence under Rule 404(b), contending that the government's Rule 404(b) argument was merely a ruse to introduce otherwise impermissible propensity evidence. In a sealed order, the district court admitted the government's proffered evidence under Rule 413 without opining on its admissibility under Rule 404(b).[4]

At trial, Guinn did not object to E.B.'s or A.F.'s testimony, nor to the admission of their protective orders. Guinn's counsel cross-examined K.F., E.B., and A.F.

When charging the jury, the district court adopted Guinn's proposed jury instruction for evidence admitted under Rule 413. The instruction read:

> In a criminal case in which the Defendant is accused of Aggravated Sexual Abuse, evidence of the Defendant's commission of another offense or offenses of sexual abuse is admissible and may be considered for any matter to which it is relevant, including its bearing on whether the Defendant committed the offense for which he is charged in the Indictment.

---

[4] But the district court did exclude evidence that Guinn had violated E.B.'s protective order. The court determined that the violations were "too removed from the charged conduct" to be admissible under Rule 404(b). Supp. R. vol. I, at 17.

However, evidence of another offense on its own is not sufficient to prove the Defendant guilty of the crime charged in the Indictment. As you consider this evidence, bear in mind at all times that the Government has the burden of proving that the Defendant committed each of the elements of the offense charged in the Indictment. Remember that the Defendant is not on trial for any act, conduct, or offense not charged in the Indictment.

R. vol. I, at 167–68; R. vol. III, at 392, 416–17.

The jury convicted Guinn on both counts as charged.

After trial, the U.S. Probation Office compiled a presentencing report. Guinn's recommended sentence was based on a total offense level of 34 and criminal-history category of IV. The report calculated Guinn's criminal-history category from his five prior adult criminal convictions—two charges of driving under the influence, two violations of a protective order, and one charge of driving under suspension. Because the instant offenses occurred during the term of one of his state criminal sentences, two points were added to reach seven total criminal-history points.[5] *See* U.S.S.G. § 4A1.1(d). This led to an advisory Guidelines range of 210 to 262 months for count one and 120 months for count two.

The district court sentenced Guinn to serve 240 months on count one and 120 months on count two, to run concurrently. His sentence also ordered five

---

[5] Guinn violated E.B.'s protective order twice. Guinn was arrested and released on bond the same day for both charges. Thus, the record shows that there was no intervening arrest between these two violations, which bears on the sentencing issue raised in this appeal.

9

years of supervised release on count one and three years on count two, to run concurrently.

The court entered judgment to that effect, and Guinn filed a timely notice of appeal.

## STANDARD OF REVIEW

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Sturm*, 673 F.3d 1274, 1285 (10th Cir. 2012). If the defendant fails to object contemporaneously or otherwise properly preserve an issue for appeal, our review is for plain error. *See United States v. Hill*, 60 F.3d 672, 675 (10th Cir. 1995). Under plain-error review, we will reverse "only if we determine that admitting the [disputed evidence] . . . affected [Guinn's] substantial rights." *United States v. Rosario Fuentez*, 231 F.3d 700, 708 (10th Cir. 2000) (internal quotation marks omitted) (quoting *Hill*, 60 F.3d at 675).

## DISCUSSION

Guinn raises two issues on appeal. First, he claims that the district court erred in admitting evidence under Rule 413 of Guinn's nonsexual (emotional and physical) abuse of his former girlfriends. Second, he disputes the calculation of his sentence.

## I.    Rule 413

The first question is whether the district court erred in admitting evidence of Guinn's nonsexual abuse toward E.B. and A.F. under Rule 413. Guinn splinters this query into many subparts. *First*, as a procedural matter,

10

Guinn alleges that he preserved his Rule 413 argument for appellate review, and thus the issue is not subject to plain-error review. *Second*, on the merits, Guinn argues that evidence of nonsexual acts falls outside the scope of Rule 413. *Third*, Guinn rejects the government's alternative theory that the nonsexual evidence was admissible under Rule 404(b).[6] *Fourth*, Guinn advances in the alternative that, even if he failed to preserve his Rule 413 challenge, he prevails anyway under plain-error review. *And fifth*, Guinn asserts that, even if the district court's ruling on the Rule 413 evidence, alone, did not amount to plain error, other errors at trial on top of the Rule 413 ruling created cumulative error.

## A.    Preservation

In responding to the government's notice of intent, Guinn did not challenge the court's admitting the nonsexual evidence, and he failed to object contemporaneously to E.B.'s and A.F.'s testimony during trial. And so, we would ordinarily consider his Rule 413 argument unpreserved. *See, e.g.*, *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993) (preservation by motion in limine); *Hill*, 60 F.3d at 675 (preservation by objection). But Guinn contends that the issue is preserved because the district court "passe[d] on" it. Op. Br. at 31 (citing *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 992 (10th Cir. 2019)).

---

[6] Because we affirm the district court's ruling under Rule 413, we needn't address Rule 404(b) or the parties' attendant arguments.

11

The government disagrees that the district court sufficiently addressed the nonsexual evidence under Rule 413 to preserve the issue for appellate review. The government argues that though "the court described non-sexual aspects of Guinn's relationships with E.B. and A.F. elsewhere in its opinion," the distinction between sexual and nonsexual evidence was not brought to the court's attention. Resp. Br. at 22. And because Guinn failed to alert the district court to its Rule 413 challenge as it pertained to the nonsexual evidence, specifically, Guinn denied the court the opportunity to rule on that issue.

When a party makes an argument for the first time on appeal, we usually deem that argument forfeited. *See Tesone*, 942 F.3d at 991 (distinguishing forfeiture from waiver). So we will consider the argument on appeal, but we will reverse the district court's judgment based on the forfeited ground "only if failing to do so would entrench a plainly erroneous result." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). This is true except "when the district court *sua sponte* raises and explicitly resolves an issue of law on the merits." *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003).

Our caselaw demands that the district court "explicitly" address the merits of an issue to insulate it from our forfeiture rule. *United States v. Johnson*, 43 F.4th 1100, 1115 (10th Cir. 2022) (concluding that the appellant's argument was not forfeited because he made "sufficiently definite, specific, detailed, and nonconjectural" assertions to preserve it below and "the district

court expressly stated that it considered" those assertions (cleaned up)). That is not what happened here.

Certainly, the district court addressed the merits of the Rule 413 issue, but not the specific objection Guinn raises on appeal. In its sealed order, the court began by reciting Rule 413, which states, "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). The court elaborated that this rule carves out an exception to the federal rules' prohibition against propensity evidence.

The district court then enumerated the three requirements for admitting evidence under Rule 413: "(1) the defendant is accused of a crime involving sexual assault"; "(2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault"; and "(3) the evidence is relevant."[7] Supp. R. vol. I, at 6 (quoting *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007)). But "even relevant evidence under Rule 413," the court explained, "is subject to the Rule 403 balancing test." *Id.* (quoting *Benally*, 500 F.3d at 1090).

In conducting Rule 403 balancing, the court applied our opinion in *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1988), which has

---

[7] To the extent we quote the district court's sealed order, we have determined the quoted material isn't sensitive. *See* Fed. R. Civ. P. 5.2(h).

become a guidepost for courts undertaking the Rule 403 analysis for Rule 413 evidence. *See United States v. Perrault*, 995 F.3d 748, 765–66 (10th Cir. 2021); *see also United States v. Piette*, 45 F.4th 1142, 1158 n.4 (10th Cir. 2022) (calling the *Enjady* analysis a "specialized Rule 403 inquiry"). The so-called "*Enjady* factors" prompt courts to weigh several components of the proffered evidence to gauge its relevance, one of which is "the similarity of the prior acts and the charged acts." *Benally*, 500 F.3d at 1090. Comparing E.B.'s and A.F.'s experiences to K.F.'s, the court found "the similarities to be significant." Supp. R. vol. I, at 13. The court observed that all three encounters "share the features of Defendant restraining his partner by pinning her wrists above her head," "controlling her arms or neck," and "putting pressure on his partner's neck, sometimes to the point of her losing consciousness." *Id.* Then, the court listed the final element of similarity between the three women's experiences, its only mention of Guinn's nonsexual behavior: "Defendant asserting control over his partner outside of the bedroom as well as during sex." *Id.* The court analyzed this element of the evidence, along with the ones quoted above, to determine that the *Enjady* factor for similarity was met.

Again, the court's reference to Guinn's activities "outside of the bedroom" was its *only mention* of the nonsexual evidence. That alone does not amount to an explicit sua sponte legal analysis sufficient to preserve Guinn's argument for appeal. *See Tesone*, 942 F.3d at 993 (concluding that the district court "explicitly" ruled on the legal issue raised on appeal and thus "passed

upon" it for preservation purposes). The court didn't delineate the sexual evidence from the nonsexual evidence because Guinn never raised the issue. Because Guinn failed to preserve his challenge under Rule 413, we proceed to review his appeal for plain error.

### B.    Plain-Error Review

A defendant establishes plain-error relief by showing "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Paup*, 933 F.3d 1226, 1235 (10th Cir. 2019) (citation omitted).

We decline to reach the merits of Guinn's arguments under Rule 413 because even if we assumed he met the first and second prongs of the plain-error test, he fails the third—showing that the alleged error affected his substantial rights. We therefore affirm the district court on that ground.

Under the substantial rights prong, Guinn bears the burden to prove that "but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 593 U.S. __, 141 S. Ct. 2090, 2096 (2021) (quoting *Rosales-Mireles v. United States*, 585 U.S. __, 138 S. Ct. 1897, 1904–05 (2018)); *see also United States v. Olano*, 507 U.S. 725, 735 (1993) (requiring defendants to "make a specific showing of prejudice" to satisfy the substantial rights prong). This burden is a heavy one. *United States v. Parson*, 84 F.4th 930, 940 (10th Cir. 2023) ("Relief on plain error review is difficult to get, as it should be." (cleaned up)).

15

Guinn asserts that his substantial rights were violated because without the nonsexual evidence the jury may have reached a different decision. To illustrate his point, Guinn highlights various reasons that the jury had to doubt the women's credibility: E.B. failed to report Guinn's repeated sexual assaults when she sought her protective order; A.F. moved in with Guinn after he allegedly raped her; K.F. falsely accused Guinn of surreptitiously recording their encounter on his phone. Guinn contends that these doubts are seen by the jury's request for more specific instructions during deliberations, including one note asking the court whether "knowledge" includes "understanding what constitutes consent." Op. Br. at 44 (quoting R. vol. III, at 467). Based on the jury questions, Guinn posits that the nonsexual evidence could have "tip[ped] the scales." *Id.* He additionally asserts that, in closing, the prosecutor emphasized Guinn's controlling and isolating behavior, which underscores the critical role that this evidence played in the government's theory of guilt.

The government disputes Guinn's argument that the outcome of his trial hinged on the nonsexual evidence. Far more likely, the government submits, the jury was convinced by E.B.'s and A.F.'s detailed recollections of Guinn raping them. The government asserts that the "limited" nonsexual evidence did not impact the jury's verdict, because (1) the undisputed, admissible Rule 413 evidence independently supported a guilty verdict; (2) Guinn's cross-examination of E.B. and A.F. elicited some of the nonsexual evidence to which he now objects; (3) if the jury doubted the women's testimony about the sexual

assaults, as Guinn argues, then the jury would have equally doubted their accounts of the nonsexual abuse; and (4) the district court issued a limiting instruction that "evidence of another offense on its own is not sufficient to prove the Defendant guilty of the crime charged in the Indictment." Resp. Br. at 32.

None of Guinn's points shake our confidence in the outcome of his trial. *See Perrault*, 995 F.3d at 776–77 (qualifying that the "reasonable probability" showing required for plain error "is a probability sufficient to undermine confidence in the outcome"). First, we are convinced that the graphic, detailed testimonies from E.B. and A.F.—and most importantly, the similarity that their testimonies bore to K.F.'s report of her rape—were far more likely to have persuaded the jury than other evidence of Guinn's generally abusive behavior.

Second, we fail to see how the jury's questions during deliberations demonstrate that they were stuck on the nonsexual evidence, specifically. *See Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 912 (10th Cir. 2019) (reasoning that though "questions can be relevant indicators of juror misperception," jury questions are not dispositive without more (citing *Hooks v. Workman*, 606 F.3d 715, 743 (10th Cir. 2010)). The jury submitted three questions, each asking for further clarification on a particular term: assault, recklessness, and knowledge. The colloquy between counsel and the court reveals that these questions were most likely referring to Guinn's sexual assault of K.F., not the other women or the other abuse. For example, in responding to the jury's question about

17

knowledge, the court and counsel agreed that the jury was likely discussing Guinn's possible intoxication the night he assaulted K.F., based on the context of the case. Viewing the jury's questions in the context of the case, we agree that the questions do not show any prejudice from the nonsexual evidence.

Third, we note the government's point that on cross-examination Guinn's counsel developed additional testimony around Guinn's nonsexual abuse of E.B. and A.F., seemingly as part of his trial strategy. At one point in cross-examining E.B., Guinn's counsel asked her about Guinn's going through her phone, got her to agree that Guinn indeed searched through her phone, and then minimized this behavior: "But you guys were kids; right?" R. vol. III, at 337. Similarly, Guinn's counsel asked A.F. to testify further about the incident of Guinn's poking her with a cattle prod and locking her in his trailer home, which she did, but then counsel suggested that Guinn was merely trying to be "funny" because he was "laughing the whole time." *Id.* at 362–63. The implication was that A.F. couldn't take the joke.

From these and similar exchanges, we can glean that the defense's strategy on cross-examination was to recast Guinn's nonsexual abusive behavior as teenage hijinks and so to undermine the witnesses' credibility by making their testimony appear exaggerated. Guinn admits as much in his reply brief, stating that some of these instances were defense counsel's attempt to put the evidence "in a better light." Reply Br. at 17. That attempt was apparently unsuccessful. But simply because Guinn failed to leverage the nonsexual

18

evidence to his advantage at trial, does not allow him to claim on appeal that he was materially prejudiced by that evidence—especially because he voluntarily developed the evidence and placed it before the jury on cross. *Cf. United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1186 (10th Cir. 2009) (cautioning that "[defense counsel] must act with care because we will not relieve them of the consequences of such litigation choices"); *Cannon v. Trammell*, 796 F.3d 1256, 1272 n.8 (10th Cir. 2015) (clarifying that the appellant could not challenge the admission of testimony he elicited in district court, only its weight); *United States v. Rios*, 611 F.2d 1335, 1339 n.4 (10th Cir. 1979) ("We agree that the appellant is not entitled to assert as grounds for his appeal some of the statements which he elicited on cross-examination.").

Finally, though we acknowledge that "when the prosecution uses closing argument to emphasize the disputed evidence, that emphasis could suggest an impact on the outcome," *United States v. Griffith*, 65 F.4th 1216, 1220 (10th Cir. 2023) (cleaned up), we are less convinced here. Because even though the prosecutor referenced the nonsexual evidence during her closing, she discussed the sexual attacks just as much, if not more.

Applying this court's "rigorous plain-error test," we hold that the alleged error, even if plain, did not adversely affect Guinn's substantial rights. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). So Guinn's claim under Rule 413 fails on plain-error review.

19

### C.    Cumulative Error

Guinn raises one final argument under a cumulative-error theory. In a cumulative-error analysis, we aggregate all the separate nonreversible trial errors to assess whether, together, they created reversible error. *See United States v. Barrett*, 496 F.3d 1079, 1121 (10th Cir. 2007). Guinn recognizes that the two errors he alleges under this theory are reviewable for only plain error because he neglected to raise them in the district court.[8] *See United States v. Dazey*, 403 F.3d 1147, 1170 (10th Cir. 2005) ("When trial counsel lodges no objection at trial to the prosecutor's comments, we review claims of prosecutorial misconduct during closing argument for plain error."). For us to consider the cumulative impact of these errors, Guinn must first prove that both were indeed "actual errors." *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (specifying that "[o]nly actual errors" factor into the cumulative-error analysis). Guinn asserts that the district court erred by allowing the government to make improper summation arguments through the prosecutor's (1) disparaging remarks during closing and (2) vouching for previously

---

[8] A mix of harmless and plain errors complicates the cumulative-error analysis. *See United States v. Caraway*, 534 F.3d 1290, 1302 (10th Cir. 2008) ("[T]here are inherent problems in cumulating unpreserved error (reviewed for plain error) with preserved error (reviewed for harmless error)."). Because both of Guinn's alleged errors were unpreserved, and thus reviewable only for plain error, we needn't engage with that more intricate framework. *See United States v. Starks*, 34 F.4th 1142, 1170 (10th Cir. 2022) (applying the revised cumulative-error analysis "when there [were] both preserved and unpreserved errors" in play).

20

undisclosed facts during closing. We disagree that either of these instances constituted actual error.

We consider a prosecutor's comments "in the context of the entire case," including whether the defense invited the comments. *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011 (10th Cir. 1999); *accord Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

First, Guinn alleges that the prosecutor "denigrat[ed]" the cross-examination process. Op. Br. at 51 (quoting as an example the prosecutor's statement that "[K.F.] was essentially called a liar over and over through cross-examination" (citation omitted)). But in context, it's clear that these comments were a rejoinder to the defense counsel's closing argument, during which he repeatedly called K.F. a liar and accused her of "mak[ing] stuff up." R. vol. III, at 449. The jury could ascertain that the prosecutor was responding zealously to the defense counsel's accusations during closing. It would be unreasonable for us to conclude that these comments either misled the jury or threatened the integrity of Guinn's trial. *See United States v. Young*, 470 U.S. 1, 12 (1985) ("[M]ost Courts of Appeals . . . have refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks . . . .").

Second, Guinn argues that the prosecutor "improperly vouched" for K.F. in stating that her account of the rape remained consistent over years and many

retellings, without submitting evidence to verify those previous accounts. Op.

Br. at 52. This argument is similarly unpersuasive.

The government states, correctly, that several of K.F.'s previous

statements about the rape were presented in evidence to the jury, including her

statement to a trauma nurse, her statement in the protective order, and her prior

sworn testimony. The prosecutor stated *once* that K.F. was "[s]omeone who is

consistent." R. vol. III, at 455. But the prosecutor's other statements about K.F.

retelling her story to the police, her mother, the nurse, the doctor, and to the

court, were all part of the government's attempt to convey how K.F. was

"revictimized" in having to tell her story over and over. *Id.* at 454. The jury

was unlikely to have been confused or led astray by the prosecutor's singular,

general comment about K.F.'s consistency.

Thus, neither of the errors that Guinn asserts were "actual errors." *See*

*Toles*, 297 F.3d at 972. Because Guinn "has failed to establish the existence of

multiple non-reversible errors . . . he cannot benefit from the cumulative error

doctrine." *United States v. Lopez-Medina*, 596 F.3d 716, 741 (10th Cir. 2010).

## II.    Sentencing

The parties agree that the district court erred in its calculation of Guinn's

criminal-history category, which inflated his advisory Guidelines range. We

also agree.

The district court sentenced Guinn to 240 months after his conviction.

This sentence fell within the advisory Guidelines range of 210 to 262 months'

imprisonment, determined by Guinn's total offense level of 34 and criminal-history category of IV. Guinn's criminal-history category was based on seven criminal-history points, derived from five former convictions, plus two points under U.S.S.G. § 4A1.1(d) for committing the underlying crime while under a state sentence. Two of his five former convictions arose from violations of E.B.'s protective order in April 2017, though Guinn was arrested and released on bond for both violations on the same day.

Guinn claims that his advisory Guidelines range was based on an allegedly inaccurate criminal-history category. Looking to U.S.S.G. § 4A1.2(a)(2), he argues that his two violations of E.B.'s protective order should have been counted as a single sentence because the incidents were not punctuated by an intervening arrest. The government and district court thus erred, Guinn asserts, because instead of imposing seven criminal-history points the court should have imposed six, which correlates to a lower criminal-history category of III.

We review Guinn's sentencing challenge for plain error because he did not object to the Guidelines computation in the district court. "When a defendant is sentenced under an incorrect Guidelines range," he needn't "make some further showing of prejudice" to satisfy the plain-error standard. *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).

Beginning with the Guidelines, Section 4A1.2(a)(2) states that prior sentences without an intervening arrest should be counted as a single sentence

23

if "the sentences resulted from offenses contained in the same charging instrument" or "the sentences were imposed on the same day." Indeed, Guinn's repeated violations of E.B.'s protective order should have been counted as a single sentence because the violations were not punctuated by an intervening arrest and his sentences were imposed on the same day. *See, e.g.*, *United States v. Silva*, 981 F.3d 794, 796, 798 (10th Cir. 2020). In failing to consolidate Guinn's protective-order-violation sentences, the district court incorrectly assessed two criminal-history points and not one. This error was clear and obvious. Such an error satisfies the first two prongs of the plain-error test; and "[w]hen a district court plainly errs in this fashion, we presume the defendant meets the third and fourth elements" as well. *United States v. Black*, 830 F.3d 1099, 1111 (10th Cir. 2016). Having established Guinn's right to plain-error relief, we vacate his sentence. Accordingly, we remand this case to the district court with instruction to resentence Guinn under the proper criminal-history category of III.

## CONCLUSION

For these reasons, we affirm the judgment and convictions against Guinn on both counts, and we vacate Guinn's sentence and remand for resentencing in accordance with this opinion.

The pending motion to seal an attachment to Guinn's opening brief is granted. The pending motion to take judicial notice of the Oklahoma state court records from Guinn's prior convictions and sentences is also granted.